UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBOCK DIVISION

NICHOLAS LEE BLAIR,

    Petitioner,

v.

    No. 5:22-CV-00262-H

DIRECTOR, TDCJ-CID,

    Respondent.

### OPINION AND ORDER

Nicholas Lee Blair, a state prisoner proceeding pro se, filed a petition for writ of habeas corpus to challenge his 2014 Lubbock County conviction under 28 U.S.C. § 2254. Respondent filed and answer and relevant state-court records, arguing that the Court should dismiss Blair's petition because it is barred by the applicable statute of limitations. Dkt. No. 15, 17. Blair filed a reply and two supplemental replies. Dkt. Nos. 20, 48, 49. As explained below, the Court concludes that the petition must be dismissed as untimely.

1. **Background**

On June 26, 2014, Blair pled guilty to aggravated sexual assault of L.B., his biological daughter who, at the time of the offense, was younger than 14. His conviction stems from, among other things, his admission that, on or about February 25, 2013, he intentionally or knowingly caused the penetration of L.B.'s sexual organ with his finger. The trial-court judge, John J. McClendon III, adjudged Blair guilty and sentenced him to 13 years' imprisonment. Dkt. No. 17-2 at 13–15. Blair did not appeal his conviction.

On October 10, 2017, Blair filed a state habeas application challenging his conviction on four grounds. *Id.* at 20–223. He claimed, among other things, that the State's lead prosecutor, Karen Sunshine Stanek, knew of and failed to disclose the fact that, several

months after Blair's arrest, L.B.'s 13-year-old half-brother, Christian Moyers, was also arrested for sexually assaulting L.B. and being indecent with two of her minor cousins. Blair also claimed that the State's failure to disclose this information led to his allegedly false confession that he contends was procured through the City of Lubbock Police Department (LPD)'s coercive and deceptive interview practices. In addition, Blair claimed that he was actually innocent and that his attorney, Jeff Nicholson, was ineffective for failing to, among other things, discover and investigate the fact that there was another perpetrator.

On January 29, 2018, Judge McClendon entered findings of fact and conclusions of law, recommending that the Texas Court of Criminal Appeals (TCCA) deny Blair's application. *Id.* at 291–309. Among other matters, Judge McClendon concluded that Blair failed to prove his prosecutorial-misconduct and ineffective-assistance-of-counsel claims. Dkt. No. 17-2 at 274–288. In doing so, he relied on the affidavits of Nicholson, Stanek, and Kim Hayes (the Juvenile Chief of the Lubbock County District Attorney's Office), all of which he found to be credible. *Id.* at 275–276. In particular, Judge McClendon believed Stanek's sworn statement that, while Blair's criminal case was pending, she was not aware of Moyers's arrest for having sexually assaulted L.B. because (1) it was being handled by the juvenile division of the district attorney's office, which was located in a different building, and (2) she did not otherwise have access to confidential juvenile records on her computer. *Id.* at 255–265; 278–280. On March 28, 2018, the TCCA denied Blair's application without a written order on the findings of the trial court without a hearing. Dkt. No. 17-1.

On April 11, 2022, Blair filed a second state habeas application, seeking to present new evidence in support of the claims that he raised in his first application. Dkt. No. 17-7 at 19–37. Blair claimed that, in November 2021 and January 2022, he discovered new

2

evidence that he contends proves (1) Stanek lied in her previous affidavit about not knowing of Moyers's arrest, and (2) the LPD is corrupt and failed to conduct a thorough investigation of his case. Blair did not attach any evidence in support of his claims. On May 12, 2022, Judge McClendon entered findings of fact and conclusions of law, recommending that the TCCA dismiss Blair's as an unauthorized subsequent application under Article 11.07 of the Texas Code of Criminal Procedure. *Id.* at 43–45; *see* Tex. Crim. Proc. Code Ann. art. 11.07 § 4(a).

On June 8, 2022, the TCCA dismissed Blair's application without written order as a subsequent application under Article 11.07, § 4(a)–(c). Dkt. No. 17-6. Blair filed this federal petition on October 1, 2022. Dkt. No. 1.[1]

2.  **Legal Standards**

    A.  **Statute of Limitations**

It is undisputed that Blair's federal habeas petition is subject to the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), which establishes a one-year time limitation for a state prisoner to file a federal habeas corpus petition. *Jimenez v. Quarterman*, 555 U.S. 113, 119 (2009); *see* 28 U.S.C. § 2244(d)(1). The limitation period begins to run from the latest of the following dates:

(A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

(B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

---

[1] *See Spotville v. Cain*, 149 F.3d 374, 377 (5th Cir. 1998) ("[A] prisoner's habeas petition is filed for purposes of determining the applicability of the AEDPA, when he delivers the papers to prison authorities for mailing.").

3

    (C)    the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    (D)    the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1)(A)–(D).

The time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection. *Id.* at § 2244(d)(2). However, state habeas applications filed after the expiration of the limitation period do not toll the limitation period. *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000).

**B.**    **Equitable Tolling**

AEDPA's one-year limitation period can be equitably tolled since it is not a jurisdictional bar. *United States v. Patterson*, 211 F.3d 927, 930 (5th Cir. 2000). However, a petitioner is entitled to equitable tolling only if he shows: (1) that he has been pursuing his rights diligently; and (2) that some extraordinary circumstance stood in his way and prevented timely filing. *Lawrence v. Florida*, 549 U.S. 327, 336 (2007).

Equitable tolling is only available in cases presenting rare and exceptional circumstances and is not intended for those who sleep on their rights. *Manning v. Epps*, 688 F.3d 177, 183 (5th Cir. 2012). Equitable tolling is not warranted merely because a petitioner proceeds pro se and is not well-versed in the law. *Saahir v. Collins*, 956 F.2d 115, 118–19 (5th Cir. 1992). Neither a mistaken interpretation of the law nor a lack of knowledge of filing deadlines are "rare and exceptional circumstances" that justify equitable tolling. *See Wion v. Quarterman*, 567 F.3d 146, 149 (5th Cir. 2009); *see also Felder v. Johnson*, 204 F.3d 168, 172 (5th Cir. 2000).

3.  Analysis

The parties dispute when the limitation period began to run. Blair argues that, under Sections 2244(d)(1)(B) and (D), the limitation period began to run on November 5, 2021 or January 7, 2022, when he allegedly discovered new evidence of "the State's fraud and misconduct." Dkt. No. 1 at 9. First, Blair alleges that, on November 5, 2021, he discovered that the LPD, in two unrelated criminal matters—which Blair refers to as the "Carruth/Read and Menegay/Guerra killings,"—unlawfully refused to investigate other known suspects. Blair argues that these cases prove that the LPD is corrupt and, in turn, for unlawful reasons, similarly refused to investigate Moyers, who he contends was a known suspect in his case.

Second, Blair alleges that Stanek, in a January 7, 2022 interview with KCBD journalist Kace Wilbanks, contradicted prior statements that she made in her January 12, 2018 affidavit, which was presented to and relied upon by the TCCA in denying his first state habeas application. In particular, Blair alleges that, in the 2022 interview, Stanek stated that she had (1) for a number of years (including 2018), been well aware of the escalation of violent juvenile offenses in Lubbock involving murder and sexual assault; and (2) made changes to the juvenile department, including the appointment of a new juvenile prosecutor.

Blair argues that the 2022 interview proves that Stanek (1) lied in her 2018 affidavit about not having knowledge of Moyers's arrest before Blair was convicted or filed his first state habeas application; and (2) "commissioned Kim Hayes to corroborate" Stanek's lie in Hayes's affidavit, which was also presented to the TCCA. In turn, Blair argues that Stanek's perjury and "fraud" on the TCCA prevented him from asserting a viable claim for prosecutorial misconduct. Dkt. No. 1-1 at 10.

### A. State Impediment

Blair argues that, under Section 2244(d)(1)(B), the limitation period began to run on either November 5, 2021—when he discovered evidence of the LPD's corruption—or January 7, 2022—when he discovered that Stanek had lied in her 2018 affidavit. The Court disagrees.

To invoke Section 2244(d)(1)(B), a prisoner must show that: (1) he was prevented from filing a petition (2) by State action (3) in violation of the Constitution or federal law. *Egerton v. Cockrell*, 334 F.3d 433, 436–37 (5th Cir. 2003).

First, Blair does not attach any evidence to substantiate his conclusory claims that Stanek or the LPD created an unlawful impediment. For example, Blair does not attach any documents concerning the "Carruth/Read and Menegay/Guerra" cases or a transcript of Stanek's 2022 interview. Regardless, even if the Court accepts Blair's claims as true, as noted by Respondent, Stanek's purported inconsistent statements about having prior knowledge of juvenile arrests involving sexual assault do not necessarily prove that she knew about Moyers's arrest while Blair's criminal case was pending in 2013 and 2014 or before he filed his first state habeas application in October 2017. At most, if anything, they bear on Stanek's credibility. Similarly, any evidence that suggests the LPD conducted an unscrupulous investigation in unrelated criminal matters does not necessarily prove that it engaged in any unconstitutional conduct concerning Blair.

Second, Blair fails to show that the State's alleged misconduct prevented him from filing his federal petition. In fact, the state-court records show otherwise. On October 10, 2017, Blair filed his first state habeas application, raising the same constitutional claims that he raises here. The fact that, years later, Blair discovered additional evidence that he contends supports those claims has no bearing on his ability to file a federal habeas petition asserting them. *See Flanagan v. Johnson*, 154 F.3d 196, 199 (5th Cir. 1998) (holding that

Section 2244(d) "does not convey a statutory right to an extended delay . . . while a habeas petitioner gathers every possible scrap of evidence that might, by negative implication, support his claim.").

For these reasons, the Court finds that Blair fails to make the necessary showing to invoke Section 2244(d)(1)(B).

### B. Factual Predicate

Blair also seeks to invoke Section 2244(d)(1)(D), arguing that the limitation period should be calculated from November 5, 2021 or January 7, 2022—the dates on which he could have discovered the factual predicate of his claims. However, Section 2244(d)(1)(D) refers to the date a petitioner is on notice of the facts which would support a claim, not the date on which the petitioner has in his possession evidence to support his claim. *See In re Davila*, 888 F.3d 179, 189 (5th Cir. 2018) (citing *In re Young*, 789 F.3d 518, 528 (5th Cir. 2015)).

Here, the state-court records show that Blair had notice of facts that would support his claims as early as 2013. In his first state habeas application filed on October 10, 2017, Blair claims that prosecutors were aware of but "suppressed" the fact that an arrest had been made that would have provided him a legitimate defense. Dkt. No. 17-2 at 27–28. In support of his application, Blair filed the affidavit of Lee Sherman, who states that, on October 3, 2013, she heard Blair report to a CPS case worker that Christian Moyers was sexually assaulting L.B. and other young girls in Tina Curtis's home. *Id.* at 172–73. Additionally, in his October 12, 2017 "Affidavit in Support of Subpoena Duces Tecum," Blair states that he believes "that sexual abuse was and possibly still is, happening at the Curtis household involving [L.B.] as I spoke to police and CPS about in my defense" and that such abuse was admitted in a family court custody hearing. *Id.* at 234–35. Blair further states that, due to his incarceration and pending charges, he has not been allowed to review

the transcripts of the proceeding, which he states are "the factual predicate to help [him] establish [his] claims, and [are] vital to [his] defense." *Id.* at 234. Moreover, in his reply, Blair explains that he learned of Moyers's arrest in July 2017, when his father told him about it. Dkt. No. 20 at 3.

As previously explained, the fact that Blair subsequently discovered new evidence to support his claims has no bearing on when he first learned of the underlying facts giving rise to his claims. *See In re Davila*, 888 F.3d at 189. Because the record shows that Blair discovered the factual basis for his claims in October 2017 at the latest, he fails to demonstrate that Section 2244(d)(1)(D) governs the timeliness of his petition.

### C.  Finality of Judgment

Because Blair fails to demonstrate that Sections 2244(d)(1)(B), (C), or (D) apply, the Court concludes that Section 2244(d)(1)(A) governs the timeliness of his federal petition. Under Section 2244(d)(1)(A), the limitation period begins to run on the date the judgment becomes final on direct review or when the time for seeking direct review expires. *See* 28 U.S.C. § 2244(d)(1)(A).

For the reasons stated by Respondent, the Court agrees that Blair's June 26, 2014 judgment became final on July 28, 2014. *See* Dkt. No. 15 at 8–9. Thus, absent any statutory or equitable tolling, Blair had to file his federal petition one year later, by July 28, 2015. Although Blair filed two state habeas applications, they do not statutorily toll the limitation period because they were filed in October 2017 and April 2022—more than two years after the limitation period expired. *See Scott*, 227 F.3d at 263.

To the extent that Blair claims that he is entitled to equitable tolling of the limitation period based on the same grounds, the Court concludes, for the above-stated reasons and those stated in Respondent's response, that Blair fails to demonstrate that he diligently

pursued his rights or that extraordinary circumstances otherwise prevented him from filing his federal petition.

In sum, Blair fails to demonstrate that statutory or equitable tolling is warranted in this case. And because Blair filed his federal petition on October 1, 2022—almost seven years after the limitation period expired—the Court concludes that it lacks jurisdiction to adjudicate Blair's claims.[2]

### D.  Actual Innocence

To the extent that Blair seeks to circumvent the limitation period based on his claim that he is "actually innocent," the Court finds that he has not made the necessary showing to do so. *See Hancock v. Davis*, 906 F.3d 387, 389 (5th Cir. 2018) (citing *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013)). Specifically, Blair fails to persuade the Court that, in light of this

---

[2] In his supplemental reply, Blair claims that, under *Glossip v. Oklahoma*, 145 S.Ct. 612, 626 (2025), the TCCA's June 8, 2022 dismissal of his second state habeas application as a subsequent application under Article 11.07 was, in essence, a substantive denial of his constitutional claims on their merits because, in dismissing the application, the TCCA necessarily had to review and reconsider if and how the new evidence that he presented affected the viability of his claims under federal law. Dkt. No. 48. In turn, Blair appears to argue that the limitation period should begin to run on June 8, 2022, when he contends the TCCA concluded its review of his claims. The Court disagrees. Even if the TCCA's dismissal is considered a ruling on the merits, which the Court need not decide, it does not serve to toll the limitation period. Under Section 2244(d)(1)(A), the limitation period begins to run on the date which the judgment of conviction became final by the conclusion of direct review or the expiration of the time for seeking such review expires, not collateral review. *See Wallace v. Mississippi*, 43 F.4th 482, 498 (5th Cir. 2022) (explaining that Section 2244(d) distinguishes between direct and collateral review). As noted by Respondent, because Blair did not file a direct appeal, under Texas law, the limitation period began to run on July 28, 2014—30 days after the trial court entered its judgment of conviction. *See* Dkt. No. 15 at 8–9; *see also* Tex. R. App. P. 26.2(a)(1).

new evidence, no reasonable juror would have voted to find him guilty beyond a reasonable doubt. *Perkins*, 569 U.S. at 386 (citing *Schlup v. Delo*, 513 U.S. 298, 329(1995)).

4.   **Conclusion**

For these reasons and those stated in Respondent's answer, the Court dismisses Blair's 28 U.S.C. § 2254 petition with prejudice as untimely. Additionally, the Court concludes that Blair has failed to show that reasonable jurists would debate whether the Court's procedural ruling was correct and whether he has put forward a valid claim of a constitutional deprivation. *See Slack v. McDaniel*, 529 U.S. 473, 484 (2000). The Court therefore denies a certificate of appealability. *See* Fed. R. App. P. 22(b)(1); *see also* 28 U.S.C. § 2253(c).

The Court will enter judgment accordingly.

So ordered.

Dated August 29, 2025.

_____
JAMES WESLEY HENDRIX
United States District Judge